UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO. 8:24-cv-2461

**CHARITY ANN RYDER**,

    Plaintiff,

vs.

**ABC LIQUORS, INC.,**
**a Florida Corporation,**

    Defendant.

                             /
_____

# COMPLAINT

Plaintiff CHARITY ANN RYDER, by and through undersigned counsel, sues Defendant ABC LIQUORS, INC., a Florida Corporation, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.    Venue is proper in this Court as all actions complained of herein and

injuries and damages suffered occurred in the Middle District of Florida.

4.     Plaintiff CHARITY ANN RYDER is a resident of Hernando County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.     Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from Aniridia, which is a permanent eye and medical condition that substantially and significantly impairs her vision and limits her ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, she is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.     Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.     Because she is blind, Plaintiff cannot use her computer without the

assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'...Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8.     Defendant is a Florida Corporation authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of over 120 U.S.-based stores, offering a vast selection of alcoholic beverages, gourmet foods, glassware, and related accessories, including the store Plaintiff intended to patronize in the near future (and as early as October and/or

early November 2024) which is located at 4120 Commercial Way, Spring Hill, FL 34606.

9.      Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

10.      Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11.      At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of over 120 U.S.-based stores under the name "ABC Fine Wine & Spirits". Each "ABC Fine Wine & Spirits" store is open to the public. As the owner, operator, and/or controller of these stores, Defendant is defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

12.      Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13.      Defendant also owns, controls, maintains, and/or operates an adjunct

website, https://abcfws.com/ (the "Website"). One of the functions of the Website is to provide the public information on the locations of Defendant's physical stores. Defendant also sells to the public its merchandise through the Website, which acts as a critical point of sale for Defendant's merchandise that is also available for purchase in, from, and through Defendant's physical stores. In addition, the Website allows users to check in-store availability of merchandise, analyze product specifications and beverage profiles, check for delivery options, arrange in-store pickups of merchandise purchased online, check current offers and sales, explore shipping and return policies, purchase gift cards, create accounts for a more personalized shopping experience, add products to Wishlist, read blog posts and view themed drink recipes, discover wine tasting events, learn about the company's membership and rewards programs, explore party planning tips, learn about booking a concierge service for special assistance with large parties, explore employment opportunities, learn about the company's history in the About ABC section, find useful information in the Frequently Asked Questions section, and read about the company's privacy policy and terms of service.

14.    The Website also services Defendant's physical stores by providing information on available merchandise, curated wine collections, news and events, current offers and sales, and other information that Defendant is interested in communicating to its customers.

15.    Because the Website allows the public the ability to secure

information about the locations of Defendant's physical stores, purchase merchandise that is also available for purchase in, from, and through Defendant's physical stores, check in-store availability of merchandise, analyze product specifications and beverage profiles, check for delivery options, arrange in-store pickups of merchandise purchased online, check current offers and sales, explore shipping and return policies, purchase gift cards, create accounts for a more personalized shopping experience, add products to Wishlist, read blog posts and view themed drink recipes, discover wine tasting events, learn about the company's membership and rewards programs, explore party planning tips, learn about booking a concierge service for special assistance with large parties, explore employment opportunities, learn about the company's history in the About ABC section, find useful information in the Frequently Asked Questions section, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical stores in that, it acts as a critical point of sale for the stores, it enables users of the Website to make purchases of Defendant's

merchandise that is also available for purchase in, from, and through its physical stores.

16.     Because the public can view and purchase Defendant's merchandise through the Website, thus the Website acts as a critical point of sale for Defendant's merchandise sold in, from, and through the physical stores, discover nearby store locations, check in-store availability of merchandise, analyze product specifications and beverage profiles, check for delivery options, arrange in-store pickups of merchandise purchased online, check current offers and sales, explore shipping and return policies, purchase gift cards, create accounts for a more personalized shopping experience, add products to Wishlist, read blog posts and view themed drink recipes, discover wine tasting events, learn about the company's membership and rewards programs, explore party planning tips, learn about booking a concierge service for special assistance with large parties, explore employment opportunities, find useful information in the Frequently Asked Questions section, the Website is an extension of, and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually

disabled public both online and in the physical stores.

17.     At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as October and/or early November 2024), Defendant's physical store located at 4120 Commercial Way, Spring Hill, FL 34606, and to search for brick-and-mortar stores that are in closest proximity to Plaintiff, check merchandise pricing, check in-store availability of merchandise, analyze product specifications and beverage profiles, select convenient delivery options, arrange in-store pickups of merchandise purchased online, check current offers and sales, purchase gift cards, create an account for a more personalized shopping experience, add products to Wishlist, read blog posts and view themed

drink recipes, discover wine tasting events, learn about the company's membership and rewards programs, explore party planning tips, learn about the company's history in the About ABC section, find useful information in the Frequently Asked Questions section, and read about the company's privacy policy and terms of service. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early October and/or early November 2024) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.   The opportunity to shop Defendant's merchandise, check merchandise pricing, check in-store availability of merchandise, analyze product specifications, check for delivery options, arrange in-store pickups of merchandise purchased online, check current offers and sales, explore shipping and return policies, purchase gift cards, create accounts for a more personalized shopping experience, add products to Wishlist, read blog posts and view themed drink recipes, discover wine tasting events, learn about the company's membership and rewards programs, explore party planning tips, learn about booking a concierge service for special assistance with large parties, explore employment opportunities, learn about the company's history in the About ABC section, find useful information in the Frequently Asked Questions section, and read about the company's privacy policy and terms of service, and more from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside

of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan her store visits and to compare merchandise, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

21.     Beginning in June 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate herself as to the merchandise, sales, services, discounts, and promotions being offered, learn about the brick-and- mortar stores, search for brick-and-mortar stores that are in closest proximity to Plaintiff, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in, from, and through the physical stores. Plaintiff also attempted to access and utilize the Website in her capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

22.     On or about June 1, 2024, Plaintiff wanted to buy wine glasses and decided to conduct a Google search to find a local store that would offer a rich collection of glassware and bar accessories. She found the Defendant's website,

which appeared to offer wine glasses she was interested in. Using JAWS screen-reader, Plaintiff attempted to navigate the website but encountered multiple accessibility barriers. The website lacked a "bypass block" option, making navigation inefficient from the start. While attempting to purchase a product, she was redirected to the store locator page. However, it became very difficult to select a nearby store because no announcement indicated that search results had appeared. Additionally, while the search results were still loading, no status message for the loading process was announced, causing her to tab to the footer section. As a result, she was unable to reach the checkout process and purchase the product she was interested in.

23.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

   a. "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

   b. Landmarks were not properly inserted into the home page. Plaintiff tried to navigate the home page using landmarks but could not access its main regions because of landmark inaccurate markup;

   c. The content on the home page was organized into sections, but there were no headings present at all. As a result, the Plaintiff was deprived of the logical

structure that would have been available to sighted users and was unable to effectively navigate the content on the home page;

d. The "Choose Pickup or Delivery" button contained a sub-menu but did not announce whether the sub-menu was "collapsed" or "expanded." As a result, Plaintiff had difficulty navigating and could not determine if the sub-menu was open or closed;

e. Plaintiff encountered incorrectly marked-up lists of categories in the main menu and sub-menus. While they visually appeared as lists, they were not programmatically formatted correctly and did not announce the number of elements included. As a result, Plaintiff was unaware that different links and categories were grouped within the same page section, leading to confusion while navigating the website;

f. Plaintiff tried to follow links on the website, such as the "same day delivery" link and social media links, and received no prior warning that the links would open in new windows. As a result, Plaintiff unsuccessfully attempted to use the "Back" function of the browser to return to the previous page and became disoriented;

g. Plaintiff was not aware of the search suggestions after search term was entered into the Search bar. The status update, such as a brief text message about search suggestions, was not provided even though the content of the page was updated and search suggestions were displayed. Without appropriate status message legally blind users do not know that search suggestions appeared on the screen;

h. Non-interactive elements were marked up as keyboard focusable elements (tabindex="0" was applied), and Plaintiff could not determine the purpose of the elements, since they were not actually interactive (did not have appropriate "role" attribute). Furthermore, tabbing through the additional focusable elements required extra effort and time from Plaintiff to find the content of interest on the website;

i. Plaintiff was unable to activate several interactive elements using the "Enter" or "Spacebar" keys. The only mechanism for interacting with and viewing items was through the use of a mouse. This issue specifically occurred with the filtering options buttons, preventing Plaintiff from effectively navigating and filtering items on the website;

j. Interactive elements on the web page had inappropriate and non-descriptive labels. Plaintiff was unable to identify the purpose of these interactive elements; for example, buttons were labeled as "Y. number of items" or "N. number of items" providing no meaningful description of their function or content;

k.  When attempting to purchase a product, the focus did not move to the dialogs that appeared after pressing the "Choose Pickup or Delivery" button. The focus order failed to shift from the trigger button to the dialog items, leaving Plaintiff confused and navigating through content in an order inconsistent with the intended flow. This issue made it difficult to operate the interface using the keyboard, further complicating the purchase process;

l.  Links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of the context;

m. Plaintiff pressed the Search button, but no status update, such as a brief message about the completion or progress of the search, was provided, even though the content of the page was updated and search results were displayed. Without an appropriate status message, legally blind users cannot determine that the search results have appeared on the screen. This issue specifically occurred after pressing the Search button in the store locator, where no status update was announced;

n.  The alert dialog displayed when Plaintiff entered invalid data into the form field was not announced. The User was not informed what field were incorrectly completed;

o.  Errors are not associated with corresponding forms and fail to clearly indicate which field had the problem so the user can easily navigate to it. Fields must be marked as containing an error and must be announced by the assistive technology.

24.    Accordingly, Defendant's Website was incompatible with Plaintiff's

screen reading software and keyboard.

25.    The fact that Plaintiff could not communicate with or within the

Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave

Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in

the same shopping experience, with the same access to the merchandise, sales,

services, discounts, as provided at the Website and in the physical stores as the

non-visually disabled public.

26.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical store located at 4120 Commercial Way, Spring Hill, FL 34606, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because of the nexus between Defendant's physical stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the

requirements of the ADA.

28.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.     The Website does not meet the Web Content Accessibility Guidelines

("WCAG") 2.2 Level AA or higher versions of web accessibility.

36.     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website and in the physical stores from their homes.

37.     Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA.

38.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

39.     The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

40.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

41.     Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

42.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

44.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

45.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

46.     Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

47.     Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

48.     Pursuant to 42 U.S.C. §12181(7), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

49.     Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical stores, purchase merchandise that is also available for purchase in, from, and through the physical stores, check in-store availability of

merchandise, analyze product specifications, check for delivery options, arrange in-store pickups of merchandise purchased online, check current offers and sales, explore shipping and return policies, purchase gift cards, create accounts for a more personalized shopping experience, add products to Wishlist, read blog posts and view themed drink recipes, discover wine tasting events, learn about the company's membership and rewards programs, explore party planning tips, learn about booking a concierge service for special assistance with large parties, explore employment opportunities, learn about the company's history in the About ABC section, find useful information in the Frequently Asked Questions section, and read about the company's privacy policy and terms of service. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical stores. Further, the Website serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's available merchandise sold through the Website and in, from, and through the physical stores.

50.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

51.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II),

unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

52.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

53.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

54.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as

prohibited by 42 U.S.C. §12182, *et seq.*

55.    Further, Plaintiff has engaged an ADA website compliance expert herein, Robert D. Moody, to review Defendant's Website and confirm that the issues that Plaintiff encountered on the Website do, in fact, exist and are, in fact, barriers to accessibility for the visually-impaired. Mr. Moody's Expert Declaration is attached to this Complaint as Exhibit "A."

56.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

57.    Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

58.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, ensuring the presence of a bypass block, providing interactive elements operable from the keyboard, and ensuring a correct focus order. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

59.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

60.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

61.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

62.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

63.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to

effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

64.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

65.    As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical stores.

66.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

67.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities

have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and becoming informed of and purchasing Defendant's merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical stores.

68.     Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain

the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

<u>**COUNT II – DECLARATORY RELIEF**</u>

69. Plaintiff re-alleges paragraphs 1 through 68 as if set forth fully herein.

70. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its physical location and Defendant's Website, which Defendant owns, operates and controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*

71. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can

access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

---

1  or similar.

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of

web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of

26

Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED: October 23, 2024.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By: ___*/s/ Aleksandra Kravets, Esq.*___
        Aleksandra Kravets, Esq.
        FBN: 120562